IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID WAYNE HALEY, an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>COUNTY OF DEL NORTE, CALIFORNIA, a political subdivision of the State of California; and COMMANDER BILL STEVEN, an individual,<br><br>    Defendants.<br>_____ / | No. C 08-04572 WHA<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

### INTRODUCTION

In this detainee civil rights action, defendants now move for summary judgment on all claims. For the following reasons, defendants' motion for summary judgement is **GRANTED IN PART** and **DENIED IN PART**.

### STATEMENT

On July 2, 2008, plaintiff David Haley was arrested and booked in the Del Norte County Jail on a felony warrant for an alleged Idaho drug-court violation. Once in custody, plaintiff signed a form indicating that he wished to be taken before a magistrate in Del Norte County (Maier Exh. C at 8). Plaintiff was then housed in "E-Tank," a dormitory-style unit for "low-level" inmates.

The next morning, plaintiff was assaulted by another inmate, Brandon Proctor. The jail's video-monitoring system captured the assault. The video shows plaintiff lying on his bunk

1   before the assault took place (Mitchell Exh. H).  According to plaintiff, Proctor approached him
2   and said he was "looking at him wrong," to which plaintiff replied that he "was being
3   extradited" and "wouldn't be there very long" (Haley Dep. 62).  Proctor proceeded to attack
4   plaintiff, punching him repeatedly over the course of approximately 40 seconds (Mitchell
5   Exh. H).

6       When Proctor ceased his attack, plaintiff gathered himself and twice pounded on the
7   door of E-Tank, apparently in an attempt to get the attention of the officers outside (*ibid.*).
8   When a correctional technician heard the pounding, video of the incident was reviewed, and
9   officers entered E-Tank to remove plaintiff and Proctor (Potter Dep. 12).  Plaintiff was taken to
10  the jail's medical examination room where medical staff provided him with pain medication and
11  an ice pack before a deputy sheriff drove him to the emergency room at Sutter Coast Hospital
12  (Croy Dep. 8; Potter Dep. 17, 19–20).

13      Medical staff at the hospital determined that plaintiff "had multiple fractures to his
14  orbital bones on both sides of his face" and "that he was going to need surgery" urgently.  The
15  deputy who escorted plaintiff to the hospital relayed this information to Sergeant Gary Potter.
16  Potter subsequently spoke to defendant Commander Bill Steven to inform him of the assault and
17  recommend plaintiff be released from custody (Potter Dep. 21–22).  At the direction of
18  defendant Steven, plaintiff was then released from custody after signing an "Agreement to
19  Appear" in an Idaho court on July 25, 2008 (Steven Dep. 20–21; Maier Exh. C at 9).

20      On July 8, 2008, five days after plaintiff was released from custody, the Del Norte
21  County Sheriff's Office alerted Idaho authorities that plaintiff had been released for medical
22  reasons, and asked that Idaho "start paperwork on [a new] Governors Warrant" so plaintiff could
23  be arrested again if he failed to appear in court (Maier Exh. C at 10).

24      In the weeks following the assault, plaintiff sought treatment on his own and with the
25  help of Daniel Stein, a physician's assistant at the Del Norte Community Health Center (Stein
26  Dep. 40–42).  He had difficulty finding a doctor that would treat him, however, as he had no
27  health insurance at the time of the incident (Haley Dep. 77).  When Stein spoke to defendant
28  Steven regarding whether the jail or county would pay for plaintiff's medical care, he was told

that "the jail/county is not responsible for long-term care even when injuries happen inside their facility," and that because plaintiff had been released from custody, the county was not responsible for paying for "future medical care visits" (Stein Dep. 42).

By the time plaintiff was able to see a doctor that would treat him, the bones in his face had "fused in place," and he was told that fixing the problem would require a "more complicated surgical process" than would have been necessary if he had received medical attention within three weeks of the incident (Pletcher Dep. 18; Hoffman Dep. 11, 15–17).

Plaintiff filed his complaint in October 2008. Defendant County of Del Norte moved to dismiss, but withdrew its motion after plaintiff filed a first amended complaint in which he specifically named defendant Steven for the first time. Claims one and two of the complaint, brought under 42 U.S.C. 1983, allege that both defendants County of Del Norte and Steven violated plaintiff's Fourteenth Amendment rights because they failed to protect him from violence at the hands of other prisoners, and were deliberately indifferent towards the serious risk of violence plaintiff was subjected to by being housed with Proctor in E-Tank (First Amd. Compl. ¶¶ 21–31). Claims three and four of the complaint, also brought under 42 U.S.C. 1983, allege that both defendants violated plaintiff's Fourteenth Amendment rights because they failed to provide him with necessary medical care, and were deliberately indifferent to his serious medical needs (*id.* ¶¶ 32–42). Claim five alleges negligence against defendant Steven (and vicariously through him, also against the County) on the ground that defendant Steven breached his duty to exercise reasonable care to protect plaintiff's health and safety (*id.* ¶¶ 43–50). Claim six alleges that both defendants violated California Government Code Section 845.6 on the ground that defendant Steven knew or had reason to know that plaintiff required medical care, failed to take reasonable action to provide that care, and caused other county employees to fail to provide it as well (*id.* ¶¶ 51–55).

Defendants now move for summary judgment on all claims.

**ANALYSIS**

Summary judgment is appropriate under FRCP 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

3

material fact and that the movant is entitled to judgment as a matter of law." A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact. *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

### 1. CLAIM ONE — AGAINST STEVEN FOR HOUSING PLAINTIFF WITH PROCTOR.

Plaintiff alleges in his complaint that defendant Steven was deliberately indifferent to plaintiff's safety by housing plaintiff in the same "tank" as Proctor. "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently culpable state of mind,' acting with deliberate indifference." *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834). Claims made by pretrial detainees are analyzed under the Fourteenth Amendment as opposed to the Eighth Amendment. "Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment, however, [courts] apply the same standards." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

Here, it is undisputed that the harm to plaintiff was "objectively, sufficiently serious." But defendant Steven argues that plaintiff cannot meet the second prong of the test. "Under [the deliberate indifference] standard, the prison official must not only be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004) (quotations omitted). Defendant Steven contends that not only did he not draw any inference that there was a risk of harm to plaintiff, but there is no evidence that he was aware of any facts demonstrating such a risk (Br. 10; Reply Br. 6). This order agrees.

4

Plaintiff cites five facts that, when taken together, he believes raise "triable issues of fact demonstrating that [defendant Steven] deliberately disregarded a substantial risk to [plaintiff's] safety" (Opp. 17–18). *First*, plaintiff states that defendant Steven is "responsible for writing, revising, and enforcing" the jail manual. A "primary objective" of the jail's "classification system," as discussed in the manual, is to "reduce the number of assaults on both inmates and staff" (Maier Exh. B at 4). *Second*, the manual requires defendant Steven to "review admissions records and data on a regular basis to ensure that correct admissions procedures are used by all staff" (*id.* at 1, 8). *Third*, plaintiff cites jail documents recommending that Proctor be placed in "medium security" (Maier Exh. C at 22–27, 30–31). *Fourth*, plaintiff notes that Proctor was moved from medium security to E-Tank for reasons having nothing to do with the classification assessment that had recommended medium security (*id.* at 18). *Finally*, plaintiff states that Proctor was in "low security for more than one month" without defendant Steven reviewing his "cell assignment or determining the purpose of the transfer" (*ibid.*).

Plaintiff argues that this evidence presents "[a]t a minimum, [] triable issues of fact that Commander Steven was deliberately indifferent to [plaintiff's] safety by failing to perform his duty to review the admission records, and/or by failing to require that Brandon Proctor [be] housed appropriately according to his classification" (Opp. 18).

Plaintiff asserts in his opposition that defendant Steven did not review the admissions process as required, alleging he chose to "disregard his duties to oversee the admissions process" (*ibid.*). Assuming, *arguendo*, that defendant Steven failed to review the admission records, the facts do not support a finding of deliberate indifference. A prison official is not "deliberately indifferent" if he "[does] not know of underlying facts indicating a sufficiently substantial danger and [is] therefore unaware of a danger." *Farmer*, 511 U.S. at 844. If defendant Steven did not review the admission records, he would not have been aware of any facts pertaining to Proctor or plaintiff, and as such could not have been deliberately indifferent. Additionally, defendant Steven's failure to review the admission records in and of itself does not demonstrate deliberate indifference: although a prison official's "[f]ailure to follow prison procedures [is] certainly negligent; [] negligence, or failure to avoid a significant risk that

5

should [have been] perceived but wasn't, 'cannot be condemned as the infliction of punishment.'" *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1052 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 838). Accordingly, even if defendant Steven failed to follow jail procedures, such a failure does not show deliberate indifference towards plaintiff's safety.

Because the evidence does not support a finding that defendant Steven acted with deliberate indifference as to plaintiff's housing at the jail, this claim must be dismissed as a matter of law. Accordingly, as to claim one, defendants' motion for summary judgment is **GRANTED**.

### 2. CLAIM TWO — AGAINST COUNTY FOR HOUSING PLAINTIFF WITH PROCTOR.

A municipality may be liable as a "person" under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dept. of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978). The Ninth Circuit has held that a plaintiff may demonstrate municipal liability in any one of three ways: (1) "[s]howing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (2) "showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984–85 (2002) (quotations and citations omitted).

Plaintiff's complaint alleges that his Fourteenth Amendment rights were violated in respect to this claim under the first prong described above, asserting his injuries are the "the result of a longstanding practice or custom which constitutes the standard operating procedure of the County of Del Norte" (First Amd. Compl. ¶ 29). In his opposition, however, plaintiff asserts his rights under the second prong, arguing that defendant County is liable because defendant Steven's "decision to disregard his duties to oversee the admissions process and to permit jail officials to disregard the written classification system constitutes a decision by the

6

'final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision'" (Opp. 18).

Because this order finds that defendant Steven was not deliberately indifferent regarding plaintiff's jail housing, defendant Steven's actions may not form the underlying basis for plaintiff's assertion of liability against defendant County under *Monell* and *Ulrich*.

Furthermore, plaintiff has cited no evidence in support of his complaint's allegation that housing plaintiff with Proctor was the result of a "longstanding practice or custom" of defendant County. It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel have an obligation to lay out their support clearly. In *Carmen v. San Francisco School District*, 237 F.3d 1026, 1031 (9th Cir. 2001), the court expressly held that "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found."

This order finds that defendant Steven was not deliberately indifferent with respect to plaintiff's jail housing, and therefore plaintiff's assertion of liability against defendant County may not rely on defendant Steven's deliberate indifference. Additionally, plaintiff does not cite any evidence in support of his original allegation that he was housed in a dangerous situation as a result of defendant County's "longstanding practice or custom." Accordingly, as to claim two, defendants' motion for summary judgment is **GRANTED**.

**3.    CLAIM THREE — AGAINST STEVEN FOR DEPRIVING PLAINTIFF OF MEDICAL CARE.**

To maintain a claim based on prison medical treatment under 42 U.S.C. 1983, an inmate must show "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.

7

*Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 1996) (citations and quotations omitted). Defendant Steven argues (a) there is no evidence that he was "deliberately indifferent" to plaintiff's medical needs, and thus that there was no constitutional violation; and (b) that he is entitled to qualified immunity.

### A.     Deliberate Indifference.

Defendants have not disputed plaintiff's assertion that his injuries constituted a "serious medical need." The deputy who escorted plaintiff to the hospital following the assault was told by doctors that the injuries would require surgery. He passed that information on to Sergeant Potter. Potter subsequently alerted defendant Steven that plaintiff "was going to need surgery and he was going to need it soon, and if not one, maybe more surgeries" (Potter Dep. 25). The injuries plaintiff sustained in the assault were clearly serious, and defendant Steven was aware of that fact. The first prong of the test has therefore been met.

The second prong of the test is less clear. It is undisputed that defendant Steven was not involved in plaintiff's medical care decisions until he was notified of the assault and the resulting injuries while plaintiff was at the hospital. Plaintiff has not contended that the medical care he actually received while still in custody was insufficient. The issue here is whether defendant Steven's decision to release plaintiff from custody — after learning that surgery would be required — constitutes deliberate indifference to plaintiff's medical needs at the time.[1]

Defendant Steven cites numerous decisions regarding the standard for deliberate indifference. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004) (holding that to be deliberately indifferent, an official must have known and disregarded "an excessive risk to inmate health"); *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (quotations omitted) ("Mere indifference, negligence, or medical malpractice will not support this cause of action"); *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (holding deliberate indifference occurs "when prison officials deny, delay or intentionally interfere with medical

---

[1] Plaintiff also asserts that defendant Steven's refusal to provide medical care a week later is evidence of deliberate indifference (Reply Br. 10). Because this order finds that a genuine issue of material fact exists simply on the basis of plaintiff's first argument, this order need not address his second contention.

8

treatment"). Defendant Steven argues that there is no evidence from which a factfinder could determine that he was deliberately indifferent. This order disagrees.

Defendant Steven testified that he ordered plaintiff's release because of staffing issues at the jail in preparation for what was going to be "a very busy holiday weekend," and also because he did not believe plaintiff's warrant was "significant enough" to "stand in the way of [plaintiff receiving medical care]" (Steven Dep. 21). Steven's account is entirely plausible. But it does not demonstrate that his decision was not deliberately indifferent. Viewing the evidence in the light most favorable to plaintiff, as this order must do, it is equally likely that defendant Steven's decision to release plaintiff was based strictly on a desire to avoid paying for a potentially expensive surgery, and had nothing to do with allowing plaintiff to get medical treatment. Defendants' counsel contended at the hearing that because defendants paid for plaintiff's initial emergency room visit, it may be assumed that if the hospital had determined plaintiff needed further medical care, defendants would have paid for that too. But the hospital *did* determine that plaintiff needed further care — plaintiff was given a referral to an ear, nose, and throat doctor prior to leaving the hospital (Haley Dep. 77). Defendant Steven actively decided that plaintiff should be released only after learning that plaintiff would require further care, including perhaps multiple surgeries — which surely would have been significantly more expensive than the initial trip to the emergency room (*id.* at 24–25; Potter Dep. 25). Additionally, plaintiff's release was only temporary. Upon his release, plaintiff was required to sign an "Agreement to Appear" as an assurance that he would turn himself in to Idaho authorities just a few weeks later (Maier Exh. C at 9; Haley Dep. 71). The County Sheriff's Office subsequently notified Idaho authorities that plaintiff had been released and asked that paperwork be started to create another warrant so plaintiff could be arrested if he failed to return to Idaho and appear in court as instructed (*id.* at 10).

A reasonable factfinder could conclude that defendant Steven's decision was made in an attempt to allow plaintiff to receive medical care for his injuries. But a factfinder could also reasonably determine that defendant Steven's decision was made strictly out of self-interest — to avoid the costs and logistical hurdles of dealing with an injured inmate — and with deliberate

9

1  indifference to plaintiff's medical needs. Plaintiff was in custody when his need for medical
2  care arose, and he was required to return to custody as soon as he had received the medical care
3  he needed. A factfinder could determine that this temporary release from custody was designed
4  expressly to allow defendants to avoid providing medical care to plaintiff. As there is a genuine
5  issue of material fact still present here, it would be inappropriate to grant summary judgment to
6  defendant Steven on this ground.

### B. Qualified Immunity.

Defendant Steven argues that he is entitled to qualified immunity. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tibbetts v. Kulongoski*, 567 F.3d 529, 535 (9th Cir. 2009) (quotations omitted). An official with qualified immunity is entitled "not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). A qualified immunity analysis involves two steps:

> First, the court determines whether the facts "show the officer's conduct violated a constitutional right." If the alleged conduct did not violate a constitutional right, then the defendants are entitled to immunity and the claim must be dismissed. However, if the alleged conduct did violate such a right, then the court must determine "whether the right was clearly established" at the time of the alleged unlawful action. A right is clearly established if "a reasonable official would understand that what he is doing violates that right." If the right is not clearly established, then the officer is entitled to qualified immunity.

*Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009) (quoting *Saucier v. Katz*, 553 U.S. 194, 201 (2001)).

As discussed above, plaintiff's alleged constitutional violation is regarding prison medical treatment under 42 U.S.C. 1983. Here, whether "the officer's conduct violated a constitutional right" under the first prong of the qualified immunity test hinges on whether defendant Steven was deliberately indifferent to plaintiff's medical needs. If a factfinder were to determine that he was not deliberately indifferent, then no constitutional violation took place and qualified immunity would be moot. For the purposes of determining whether defendant Steven is entitled to qualified immunity, we must assume that he was deliberately indifferent

10

1   and therefore that he did violate a constitutional right. The second prong of the qualified
2   immunity analysis is whether the right was "clearly established" such that a reasonable official
3   would have understood that releasing plaintiff from custody would violate that right. *Saucier*,
4   533 U.S. at 202; *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002).

5   At the time that plaintiff's need for medical attention arose, he was a prisoner. Plaintiff
6   was still a prisoner when defendant Steven was notified about his medical needs (Steven Dep.
7   17). Accordingly, the Supreme Court's holding in *Estelle* applies. *Estelle* clearly establishes
8   the rule that "deliberate indifference to a prisoner's serious illness or injury states a cause of
9   action under § 1983." *Estelle*, 429 U.S. at 105. In *Wakefield v. Thompson*, 177 F.3d 1160 (9th
10  Cir. 1999), the Ninth Circuit explained its view of *Estelle*:

> As is well established, and as the respondent asserts, the Due Process Clause generally does not place affirmative duties on the state. The state, for example, has no duty to fund medical services for the general public. Over twenty years ago, however, the Supreme Court recognized a critical exception to this rule. In [*Estelle*], the Court explained that "it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." In the Court's words, the government has an "obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." The *Estelle* Court concluded, accordingly, that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, mandates that states provide adequate medical care to all of their prisoners.

20  *Id.* at 1163–64 (quoting *Estelle*, 429 U.S. at 103–05) (other citations omitted).

21  Defendant Steven argues that there is "no law that would have given [him] 'fair warning'
22  that by authorizing plaintiff's release from custody following plaintiff's evaluation and
23  treatment at the local hospital, he was depriving plaintiff of a clearly established constitutional
24  right" (Br. 16–17). But *Estelle* gives that fair warning. *Estelle* does not say that the government
25  must *either* provide medical care for a prisoner *or* let that prisoner go. *Estelle* clearly states that
26  the government has an "obligation to provide medical care" for prisoners. *Estelle*, 429 U.S. at
27  103.

28

1         Defendant Steven may have acted in good faith by releasing plaintiff from custody — he
2 may have believed that releasing plaintiff would assist him in obtaining medical care. He will
3 have an opportunity to show his good faith at trial in an attempt to demonstrate that he was not
4 deliberately indifferent to plaintiff's medical needs. But under *Estelle*, defendant Steven had a
5 clear obligation to *provide* medical care for plaintiff — releasing plaintiff to fend for himself is
6 not the same thing as providing care.

7         Defendant Steven contends that it is not clearly established that he was required to
8 provide medical care because "the constitutional duty to provide medical care to an inmate
9 exists because an inmate is unable to care for himself." Here, defendant Steven argues, plaintiff
10 was released, and he was therefore able to care for himself (Br. 17). Defendant Steven cites
11 *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), in support
12 of his argument that once plaintiff was released, the rationale for providing him with medical
13 care — his incarceration — no longer existed. But in referencing *DeShaney*, defendant Steven
14 ignores that plaintiff *was a prisoner when his medical needs arose*. Defendant Steven in effect
15 asks us to modify the Supreme Court's holding in *Estelle* — to add an option for releasing a
16 prisoner instead of providing him with medical care.

17         Finally, defendant Steven relies on an unpublished decision written by Judge Davidson
18 in the Northern District of Mississippi, *Smith v. Tupelo*, No. 1:05CV266-D-D, 2007 WL
19 2071811 (N.D. Miss. July 19, 2007). *Smith* is easily distinguishable. In *Smith*, it was
20 determined that the plaintiff would need surgery to repair a broken jaw he sustained when he
21 was punched by another inmate. When the plaintiff was released, a surgery had already been
22 scheduled for him. Upon his release, instead of going to the hospital for his surgery, the
23 plaintiff went to an ex-girlfriend's house. He did not go to the hospital for his surgery until six
24 days later. *Id.* at *6. In granting summary judgment for the defendants, Judge Davidson stated
25 that, in his opinion,

26         Plaintiff cannot meet the deliberate indifference standard.
        Defendants could not have possibly known that Plaintiff would
27         fail to report for scheduled surgery when they released him from

28

> custody. Nor could Defendants have known that Plaintiff would delay the surgery for 6 days. As a result, Defendants could not and did not knowingly disregard a substantial risk of harm.

*Ibid.* The facts here are very different — no arrangements were made by jail officials to ensure that plaintiff would receive proper medical treatment. Judge Davidson's reasoning in *Smith* is not applicable here.

A reasonable official would understand that *Estelle* requires that he or she actually provide an injured inmate with medical care, and not merely release him. This is particularly true where, as here, the release is strictly temporary and the inmate is expected to return to custody after he has found and received medical care on his own. The right is therefore clearly established, and defendant Steven is not entitled to qualified immunity. *Saucier*, 533 U.S. at 202.

Because defendant Steven is not entitled to qualified immunity on this claim, and there remains a genuine issue of material fact as to whether he acted with "deliberate indifference" by releasing plaintiff from custody, summary judgment on this claim is not appropriate. Accordingly, as to claim three, defendants' motion for summary judgment is **DENIED**.

### 4. CLAIM FOUR — AGAINST COUNTY FOR DEPRIVING PLAINTIFF OF MEDICAL CARE.

As discussed above in relation to claim two, a plaintiff may demonstrate municipal liability in any one of three ways: (1) "[s]howing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (2) "showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich*, 308 F.3d at 984–85 (quotations and citations omitted).

Defendant County's primary argument here is "[b]ecause plaintiff's claim for deliberate indifference to medical care against defendant Steven fails as a matter of law, so does the accompanying *Monell* claim against the County" (Br. 17). As discussed above, plaintiff's claim

1  against defendant Steven does not fail as a matter of law. It may therefore provide the necessary
2  underlying constitutional violation by which defendant County may also be held liable.

3  Defendant County's only remaining argument on this issue is that municipal liability for
4  an improper custom or practice may not be based on "isolated or sporadic incidents; it must be
5  founded upon practices of sufficient duration, frequency and consistency that the conduct has
6  become a traditional method of carrying out that policy." *Trevino v. Gates*, 99 F.3d 911, 918
7  (9th Cir. 1996).

8  Plaintiff argues that defendant County is liable under *Monell* and *Ulrich* based on either
9  of the first two methods laid out in *Ulrich*. Plaintiff cites the depositions of three jail employees
10 to support his argument that injured inmates are regularly released rather than treated — in other
11 words, that releasing injured inmates is a "longstanding practice or custom" (Flores Dep. 30;
12 Phillips Dep. 2–3; Croy Dep. 2). Plaintiff also cites defendant Steven's deposition testimony to
13 support his argument that, as the commander of the jail, defendant Steven represents the "final
14 policymaking authority of Del Norte County" with respect to decisions of this nature (Steven
15 Dep. 14–15, 20–21). Defendant County has not responded to these arguments.

16 At the very least, plaintiff has provided enough evidence to demonstrate the existence of
17 a genuine issue of material fact as to whether defendant County is liable for the decision to
18 temporarily release plaintiff rather than provide him with medical care. Accordingly, as to
19 claim four, defendants' motion for summary judgment is **DENIED**.

20 **5.  CLAIM FIVE — AGAINST STEVEN AND COUNTY FOR NEGLIGENCE.**

22 Defendants first argue that because "plaintiff's complaint fails to state a valid cause of
23 action under federal law," the Court should decline to exercise jurisdiction over claims five and
24 six, both of which are based on state law (Br. 18). Because this order does not dismiss all of
25 plaintiff's federal claims, supplemental jurisdiction over the state law claims is proper.

26 Plaintiff's negligence claim rests entirely on the recent decision of the California Court
27 of Appeal in *Giraldo v. California Department of Corrections and Rehabilitation*, 168 Cal. App.
28 4th 231 (Ct. App. 2008), in which the court found "there is a special relationship between jailer
and prisoner which imposes a duty of care on the jailer to the prisoner." *Id.* at 252–53. Plaintiff

14

argues that defendant Steven "breached his duty to exercise reasonable care to protect [plaintiff's] health and safety," and that because defendant Steven was acting within the scope of his employment when he breached this duty, the "County of Del Norte is vicariously liable for Commander Steven's negligence pursuant to section 815.2 of the Government Code" (First Amd. Compl.¶¶ 45–50).

Defendants assert that three sections of the California Government Code — 844.6, 820.8, and 820.2 — immunize them against plaintiff's negligence claim. Plaintiff's opposition completely fails to respond to defendants' claims of immunity.

Defendant Steven asserts that he is immune under Section 820.2, which states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Defendant Steven argues that prisoner-housing decisions are discretionary in that they "require[] the exercise of judgment or choice." *Burgdorf v. Funder*, 246 Cal. App. 2d 443, 449 (Ct. App. 1966); *see also C.N. v. Wolf*, 410 F.Supp. 2d 894, 902 (C.D. Cal. 2005) ("Discretion has also been defined as meaning equitable decision of what is just and proper under the circumstances"). Defendants assert that because these decisions are discretionary, defendant Steven is immune pursuant to Section 820.2. Because plaintiff does not dispute the discretionary nature of prisoner housing decisions and cites no evidence that would demonstrate such decisions are not discretionary, defendant Steven is entitled to immunity under Section 820.2.

Considering the immunity of defendant Steven, defendant County asserts that it is also immune under Section 815.2(b), which provides "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." *See also Caldwell v. Montoya*, 10 Cal. 4th 972, 980 (Cal. 1995) ("[P]ublic entities are immune where their employees are immune, except as otherwise provided by statute"). As plaintiff does not dispute this assertion or provide any caselaw or evidence indicating the contrary, this order agrees that defendant County is also immune.

15

California law clearly states that defendant Steven, as a public employee, and defendant County, as a public entity, are immune from suit in this action. Plaintiff has failed to show otherwise. Indeed, although plaintiff specifically rebuts defendants' immunity arguments regarding claim six, below, he has chosen to entirely ignore those same arguments as they apply to claim five here (Opp. 16 n.6). Plaintiff's reliance on a lone decision from the California Court of Appeal is not sufficient to overcome the longstanding policy that "sovereign immunity is the rule in California [and] governmental liability is limited to exceptions specifically set forth by statute." *Cochran v. Herzog Engraving Co.*, 155 Cal. App. 3d 405, 409 (Ct. App. 1984). Plaintiff apparently is content to rely on *Giraldo* to explain to this Court why immunity should not apply to protect defendants here. But as defendants point out, *Giraldo* did not address the issue of governmental immunities. Nor did the decision explain why immunity could be overcome in that action — let alone in other actions.

Defendant County also asserts its immunity under Section 844.6(a), which provides "a public entity is not liable for: (1) An injury proximately caused by any prisoner[, or] (2) An injury to any prisoner." Similarly, defendant Steven also asserts his immunity under Section 820.8, which provides "a public employee is not liable for an injury caused by the act or omission of another person." Because this order finds both defendants immune from this claim on other grounds, we need not reach these arguments.

Both defendants are protected from this claim by immunity under the California Government Code. Accordingly, as to claim five, defendants' motion for summary judgment is **GRANTED**.

    **6.**    **CLAIM SIX — AGAINST STEVEN AND COUNTY FOR VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 845.6.**

Section 845.6 provides, in relevant part:

> [A] public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

"In order to state a claim under § 845.6, a prisoner must establish three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed

16

to reasonably summon such care." *Jett*, 439 F.3d at 1099. Defendants cite *Watson v. State of California*, 21 Cal. App. 4th 836 (Ct. App. 1993), for this same standard, asserting that plaintiff's need for medical care here was not immediate, and that defendant Steven did not fail to summon the necessary care.

But plaintiff has presented evidence from which a factfinder could determine that defendant Steven knew plaintiff required immediate medical care. Defendant Steven admits that he was informed as to plaintiff's injuries and his need for surgery (Steven Dep. 24). And Sergeant Potter's testimony indicates that defendant Steven may have known the need was urgent. Potter testified that his recommendation to defendant Steven that plaintiff be released was based on the fact that plaintiff "was going to need surgery and he was going to need it soon . . . . [I]t is a head trauma, and it takes priority" (Potter Dep. 21, 25).

In *Jett*, the Ninth Circuit addressed exactly what is expected of jail officials in providing medical care to prisoners under Section 845.6:

> We hold the term "immediate medical care" as used in [Section 845.6] includes both diagnosis *and* treatment . . . . [I]f the California Legislature intended the duty of summoning immediate medical care to be limited only to diagnosis or to the first time there was need for treatment for a serious medical condition, it would have specified such.

*Jett*, 439 F.3d at 1099 (emphasis added). Accordingly, Section 845.6 requires that jail officials provide an injured inmate not only with a diagnosis, but also with actual treatment. The Ninth Circuit specifically found that Section 845.6 "requires medical care to be summoned for an inmate who needs immediate medical care to have a fractured bone set and cast." *Id.* at 1093. Here, plaintiff, who had sustained multiple broken bones in his face, was taken to the hospital where his injuries were diagnosed. But he was not treated — he was instead temporarily released from custody.

Similarly to the discussion of *Estelle* in relation to claim three, above, accepting defendants' assertion that the requirements of Section 845.6 were met by simply releasing plaintiff and allowing him to seek care on his own would require reading words in to the statute that are not there. Section 845.6 requires a public employee to "take reasonable action to summon" medical care. The statute does not provide the option of releasing an injured prisoner

17

so he may seek treatment on his own.

Defendants may believe that releasing plaintiff in this case constituted "reasonable action" in summoning care. They will have the opportunity to demonstrate as much at trial. But at the very least, there is a genuine issue of triable fact as to whether such action was reasonable or not.

Defendants argue that Section 820.2 provides defendant Steven with immunity from this claim as well, because the decision to release plaintiff from custody was "discretionary" (Br. 21). But Section 820.2 specifically states that it applies "[e]xcept as otherwise provided by statute." Section 845.6 explicitly provides that immunity *does not attach* "where the employee is acting within the scope of his employment [and] knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Immunity does not shield defendants against this claim.

Finally, because California "has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees," if defendant Steven were to be found liable under claim six, defendant County would be liable as well. *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002); Cal. Gov. Code § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee").

Genuine issues of triable fact exist as to whether defendant Steven met his burden of providing medical care to plaintiff under Section 845.6. Accordingly, as to claim six, defendants' motion for summary judgment is **DENIED**.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED** as to claims one, two, and five. Defendants' motion is **DENIED** as to claims three, four, and six.

A denial of summary judgment does not mean that the case will necessarily go to the jury. It usually means that it will. But sometimes a plaintiff's case at trial is weaker than the opposition to a summary judgment motion. This could well warrant a Rule 50 order at the end of the plaintiff's case. Or, some factual blur in the defense summary judgment record is clarified in sharp focus at trial, necessitating a Rule 50 order.

**IT IS SO ORDERED.**

Dated: October 30, 2009

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE